UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANIA KHODABAKHSHIAN,

                Plaintiff,

v.

MARCO RUBIO, *et al.*,

                Defendants.

Case No. 25-cv-1981-MJS

## MEMORANDUM OPINION

Plaintiff Ania Khodabakhshian brings this suit against U.S. Secretary of State Marco Rubio and Kenneth Platek, the Acting Director of the U.S. Department of Homeland Security's ("DHS") National Vetting Center ("NVC")[1]—both in their official capacities—to compel a final decision on Plaintiff's H-1B nonimmigrant visa application. Her application has been suspended in "administrative processing" since April 2024. Through this lawsuit, Plaintiff alleges Defendants have unreasonably delayed and unlawfully withheld a final determination on her application, and she seeks relief under the Administrative Procedure Act ("APA"), 8 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361. Defendants move to dismiss (ECF No. 8), arguing that Plaintiff's claims fail because: (1) she does not identify a clear, non-discretionary duty that

---

[1] The parties contest whether Kenneth Platek, in his capacity as Acting Director of the NVC, is properly named as a defendant. (*See* ECF No. 8 ("Defs.' Mem.") at 10; *see also* ECF No. 9 ("Pl.'s Opp'n") at 18–21.) Taking Plaintiff's allegations as true and drawing all reasonable inferences in her favor, Plaintiff has sufficiently alleged that the NVC Director is involved in the administrative processing of nonimmigrant visa applications, rendering that official a proper defendant, at least at this threshold stage of the case. *See, e.g., Ulianov v. Rubio*, 2025 WL 1865111, at *4 n.5 (D.D.C. July 7, 2025) (citing *Sarshartehran v. Rubio*, 2025 WL 1261787, at *1, *3 & n.3 (W.D. Va. May 1, 2025)). Defendants may renew this argument later in the case, with the benefit of a more fully developed record, should they deem it appropriate.

Defendants have failed to carry out, and (2) the doctrine of consular non-reviewability bars her claims. The Court disagrees, so it **DENIES** the motion.

## RELEVANT STATUTORY FRAMEWORK

The Immigration and Nationality Act ("INA") authorizes the Department of Homeland Security to admit foreign workers into the United States to perform certain types of labor. *See* 8 U.S.C. § 1101(a)(15)(H). As relevant here, H-1B visa-holders are admitted "to perform services … in a specialty occupation" for an initial period of three years, with the prospect of an extension for another three years. *See id.*; 8 U.S.C. § 1184(i)(1)–(3) (defining specialty occupation as one requiring "theoretical and practical application of a body of highly specialized knowledge" and a "bachelor's or higher degree"); *see also Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 664 F. Supp. 3d 143, 146 (D.D.C. 2023) (summarizing overall contours of the H1-B visa).

To start the H-1B visa application process, a sponsoring employer must obtain a certification from the U.S. Department of Labor confirming that no American workers are "able, willing, qualified[,] … and available" to perform the job, and that employing the foreign worker will not negatively impact the wages or working conditions of comparable American employees. *Save Jobs USA*, 64 F. Supp. 3d at 146.; *see also* 8 U.S.C. § 1182(a)(5)(A)(i)(I). If the Labor Department issues the requested certification, the employer must file a Form I-140 petition with U.S. Citizenship and Immigration Services ("USCIS"). *Id.*; 8 U.S.C. § 1154(a)(1)(F), (b); 8 C.F.R. § 204.5(a). Once USCIS approves the petition, the individual applicant must then complete and submit a Form DS-160 (Online Nonimmigrant Visa Application) and attend an interview with a consular officer at a U.S. Consulate. *Datta v. Rubio*, 2025 WL 752643, at *1 (D.D.C. Mar. 10, 2025); *see also* 8 U.S.C. § 1202(h); 22 C.F.R. §§ 42.61(a), 42.62. At the end of that interview, State Department regulations require that the consular officer either issue or refuse the visa. *See*

22 C.F.R. § 41.121(a); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022). If a consular officer believes they need more information to determine the applicant's eligibility, they may place the application into "administrative processing" per Section 221(g) of the INA. *See* 8 U.S.C. § 1201(g); 22 C.F.R. § 42.63(c); *see also Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022). This "administrative processing" step is sometimes shorthanded as a "221(g) notice" or "221(g) refusal." *Arapov v. Rubio*, 2025 WL 2732722, at *4–6 (D.D.C. Sept. 25, 2025) (Sharbaugh, M.J.). As explained next, that is what occurred here.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts, accepted as true, from the complaint. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Plaintiff Ania Khodabakhshian is a dual citizen of Armenia and Iran. (ECF No. 1 ("Compl.") ¶ 2.) She seeks a nonimmigrant visa under the H-1B category. (*Id*. ¶ 1.) She graduated with Honors from the Politecnico di Milano, earning her PhD in Architecture, Built Environment, and Construction Engineering. (*Id*. ¶ 58.) The University of California Los Angeles ("UCLA") has hired Dr. Khodabakhshian as a Postdoctoral Scholar in the B. John Garrick Institute for the Risk Sciences, applying to sponsor her for an H-1B visa.[2] (*Id*. ¶ 3, 27, 59.) UCLA submitted a Form I-129 petition on Plaintiff's behalf on March 11, 2024, and USCIS promptly approved the petition just one week later and forwarded it to NVC for pre-processing. (*Id*. ¶¶ 3–4, 60–61.)

---

[2] While the briefing does not expound upon Dr. Khodabakhshian's accomplishments, the record reflects that her Postdoctoral Scholar position at UCLA is a specialty occupation requiring "theoretical and practical application of a body of highly specialized knowledge." 8 U.S.C. § 1184(i)(1)(A); Compl. ¶¶ 4, 61.

3

Then, a few weeks later, Dr. Khodabakhshian submitted an online Nonimmigrant Visa Application ("Form DS-160"). (*Id.* ¶ 62.) She soon attended her visa interview at the U.S. Embassy in Milan, Italy on April 15, 2024. (*Id.* ¶¶ 2, 61.) At the end of that interview, the consular officer advised that her application would require further administrative processing and issued a refusal under 8 U.S.C. § 1201(g). (*Id.* ¶¶ 6, 63.) Dr. Khodabakhshian was instructed to submit additional evidence, including a completed questionnaire (Form DS-5535), along with her UCLA offer letter, resume, and list of academic publications. (*Id.* ¶ 63.) The very next day, Dr. Khodabakhshian submitted the required documents. (*Id.* ¶ 64.) When she requested an update more than a year later, the consulate replied: "Once the necessary administrative process is complete, we will immediately communicate the decision to you." (*Id.*; *see also* ECF No. 1-3 at 2, Pl.'s Ex. C.)

At the time Plaintiff filed this action in June 2025—approximately 14 months after her interview and the resulting 221(g) refusal—the State Department's Consular Electronic Application Center ("CEAC") Visa Status Check website indicated that Plaintiff's application status was still "[r]efused." (Compl. ¶ 66; *see also* ECF No. 1-4, Pl.'s Ex. D.) The website advises "those who were 'refused for administrative processing [that their] case will remain refused while undergoing such processing[,]'" but that they "will receive another adjudication once such processing is complete[,]" and they "will be contacted if additional information is needed." (*Id.*) Plaintiff alleges she has undertaken "all reasonable attempts to understand the nature of the delay, including congressional inquiries," but to no avail. (Compl. ¶ 67.)

As of this ruling—now more than 18 months after Plaintiff's consular interview and the resulting 221(g) refusal—Plaintiff's application remains pending with no final decision.

**LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal on the basis that the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion brought under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). The plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (citation omitted). But courts must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiff's favor." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

Under Federal Rule of Civil Procedure 12(b)(6), courts should dismiss a complaint that fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Under Rule 12(b)(6), a court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). That said, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot forestall a motion to dismiss. *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Defendants make two arguments for dismissal under Rules 12(b)(1) and 12(b)(6).[3] First, Defendants argue that Plaintiff's claims fail because there is no clear and discrete duty that

---

[3] Defendants never really parse out which arguments they bring—or which claims they attack—under Rule 12(b)(1) versus Rule 12(b)(6), leaving that task to the Court. For purposes of the Mandamus Act claim, the "threshold requirements are jurisdictional," including the need to show "a clear duty to act," which would implicate Rule 12(b)(1). *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). But the parallel argument as to Plaintiff's APA claim speaks only to whether she has stated a claim for relief—and not the Court's jurisdiction to act—meaning that Defendants' argument is properly analyzed under Rule 12(b)(6).

5

obligates them to further adjudicate Plaintiff's visa application after it was initially "refused" under Section 221(g) and placed into administrative processing. (ECF No. 8 ("Defs.' Mem.") at 10–14.)[4] Second, Defendants maintain that the doctrine of consular non-reviewability bars judicial review of Plaintiff's claims. (*Id.* at 15–18.) This Court recently considered and rejected both arguments in a largely analogous case. *Arapov*, 2025 WL 2732722, at *2. On review, it finds no basis to depart from its prior analysis.

*First*, the Court stands by its holding that issuing a "final decision on a visa application is plainly a discrete agency action" that "is required by both the APA and federal regulations." *Arapov*, 2025 WL 2732722, at *4 (collecting cases). Based on the complaint's allegations here, Defendants have not satisfied this requirement. As the Court said before, "a 221(g) refusal—and the concomitant placement of an application into 'administrative processing' limbo"—does not amount to a final decision. *Id.* Although Defendants have "certainly made *a* decision" to place Plaintiff's application in administrative processing, they have not made "*the* all-important yes-or-no decision" that "puts [her] application[] to rest." *Thein v. Trump*, 2025 WL 2418402, at *9 (D.D.C. Aug. 21, 2025) (emphases in original). Defendants' hook-line-and-sinker reliance on the D.C. Circuit's decision in *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024), is unavailing. This Court already held that, as an unpublished disposition, *Karimova* is not precedential under the D.C. Circuit's Rules and so is not binding in this case. Further, the Court again does not find *Karimova*'s rationale persuasive as applied to the claims alleged here. *Arapov*,

---

*See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011). Finally, the doctrine of consular non-reviewability is "not a jurisdictional defense," *Janay v. Blinken*, 743 F. Supp. 3d 96, 113 (D.D.C. 2024), so that issue is likewise reviewed under Rule 12(b)(6). Ultimately, regardless of which Rule 12 lens the Court uses to scrutinize Defendants' dismissal arguments, it would reach the same result.

[4] Citations to the parties' briefs are to the page numbers assigned by the electronic case-filing system.

2025 WL 2732722, at *5. At bottom, Plaintiff's case is premised on a clear, discrete, and non-discretionary duty to act. Defendants' argument to the contrary fails.

***Second***, "judges in this District have overwhelmingly agreed that the doctrine of consular non-reviewability is not implicated on these facts." *Id.* at *6 (collecting cases). This is because, as in other cases, Dr. Khodabakhshian is "not asking for judicial review of the *substance* of any final decision to grant or deny a visa" but simply "want[s] a conclusive answer one way or the other." *Id.* Put another way, her lawsuit is one that seeks "to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered." *Id.* (citing *Shushkov v. Rubio*, 2025 WL 2389939, at *5 (D.D.C. Aug. 18, 2025)). Otherwise, insofar as Defendants again rely on *Karimova* for this point, that argument fares no better this time around. Along with the points already made, the Court of Appeals declined to even reach the question of consular non-reviewability issue in that case. *Karimova*, 2024 WL 3517852, at *6 ("[W]e need not decide whether that principle of nonreviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision[.]"). Thus, Defendants' invocation of consular non-reviewability fails. *See Arapov*, 2025 WL 2732722, at *6.

\*      \*      \*

Because the Court rejects Defendants' two arguments for dismissal, its analysis ends there. Defendants did not argue in their motion to dismiss that Plaintiff has not alleged unreasonable delay under the so-called "*TRAC* factors," *see Telecomms. Rsch. & Action Ctr.v. F.C.C. ("TRAC")*, 750 F.2d 70, 79–80 (D.C. Cir. 1984), positing that it would be "unnecessary for the Court to apply the [*TRAC*] factors … to dispose of this case." (Defs.' Mem. at 7.) Instead, Defendants suggested they would separately argue those points down the road, as needed. (*Id.* at

7

7, n.1.) Plaintiff agrees that an analysis of the *TRAC* factors is "not appropriate at this stage" (Pl.'s Opp'n at 41–42).[5] The Court follows the parties' lead and leaves that issue for another day.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss. The Court will issue a separate order so stating.

Dated: November 10, 2025

                                                  MATTHEW J. SHARBAUGH
                                                  United States Magistrate Judge

---

[5] Plaintiffs nevertheless proceeded to engage in a relatively robust analysis of the *TRAC* factors in their opposition brief. (Pl.'s Opp'n at 48–58.) That approach prompted Defendants to do the same on reply. (ECF No. 11, Reply at 25–31.) The Court is surprised by the amount of unnecessary ink both sides spilled on an issue they agreed did not need to be decided at this juncture. The Court does not consider it.