**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANIA KHODABAKHSHIAN,<br><br>          Plaintiff,<br>     v.<br><br>MARCO RUBIO,<br>     *U.S. Secretary of State*, *et al.*,<br><br>          Defendants. | Case No. 25-cv-1981-MJS |

## MEMORANDUM OPINION

Ania Khodabakhshian hopes to come to the United States on a nonimmigrant visa that would allow her to work as a postdoctoral scholar with a prominent university. After her April 2024 interview during the visa process, she was issued a "refusal" under Section 221(g) of the Immigration and Nationality Act ("INA") and was told that her application required further "administrative processing." She has been waiting ever since. Growing understandably impatient, Khodabakhshian turned to the courts with claims of unreasonable delay under the Administrative Procedure Act ("APA") and the Mandamus Act. At the outset of the case, Defendants moved to dismiss under Rule 12(b)(6), arguing that the claims were not premised on a discrete, nondiscretionary duty that remained unfulfilled and were barred by the doctrine of consular non-reviewability. The Court disagreed on both points and denied the motion. Now, Defendants seek judgment on the pleadings under Rule 12(c) based on the alternative argument that the delay Khodabakhshian complains about is not unreasonable as a matter of law. This time around, the Court agrees. Accordingly, the Court **GRANTS** the motion and **DISMISSES** the case.

**RELEVANT BACKGROUND**

The Court already chronicled this dispute's backdrop once, *see Khodabakhshian v. Rubio*, 2025 WL 3135640, at *2 (D.D.C. Nov. 10, 2025), so it offers only a high-level summary here.

Khodabakhshian is a dual citizen of Armenia and Iran who holds a Ph.D. in Architecture, Built Environment, and Construction Engineering. (ECF No. 1 ("Compl.") ¶ 58.) In March 2024, she began the process of applying for an H-1B nonimmigrant visa that would allow her to travel to the United States to work as a postdoctoral scholar at a research institute affiliated with the University of California, Los Angeles. (*Id.* ¶¶ 59–60.) About a month into the application process, in April 2024, she attended a consular interview abroad, during which she was advised that her application required further "administrative processing" and was thus "refused" under INA section 221(g), 8 U.S.C. § 1201(g). (*Id.* ¶¶ 63, 66.) Khodabakhshian promptly submitted some additional documentation that was requested (*id.* ¶ 63–64), but she *still* awaits a final determination on her visa application beyond the original Section 221(g) refusal.

In June 2025, Khodabakhshian filed suit. She brings claims for unreasonable delay and seeks declaratory and injunctive relief under the APA, 8 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361. (*See generally* Compl.) In November 2025, the Court denied Defendants' earlier arguments for dismissal. Defendants now take a different tack, moving for judgment on the pleadings under Rule 12(c) on the basis that the complaint fails to plausibly allege that the challenged delay is unreasonable. (ECF No. 15 ("Mot.").) The matter is fully briefed and ripe for decision. (*See* ECF No. 21 ("Opp'n"); ECF No. 23 ("Reply").)

**LEGAL STANDARD**

Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). A movant is

2

entitled to judgment on the pleadings if it "demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)). Where a defendant seeks judgment based on a plaintiff's failure to state a claim, as here, "a Rule 12(c) motion ... is functionally equivalent to a Rule 12(b)(6) motion[.]" *Liu v. Georgetown Univ.*, 2026 WL 1298613, at *4 (D.C. Cir. May 12, 2026) (quoting *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012)). Under that standard, to survive the Rule 12(c) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). So, at the judgment-on-the-pleadings stage, courts must view the allegations in the light most favorable to the non-moving party and construe all reasonable inferences in their favor. *See McNamara v. Picken*, 866 F. Supp. 2d 10, 14 (D.D.C. 2012); *see also Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 34 (D.C. Cir. 2004). Even so, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot forestall a Rule 12(c) motion. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

"To state a claim for unreasonable delay, plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and second, that the delay was unreasonable." *Da Costa v. Immigration Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (cleaned up). This Court already rejected Defendants' contention that Khodabakhshian falls short on the first element, so the only remaining question is whether she plausibly alleges the second.

"There is no per se rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United,* 372 F.3d 413, 419 (D.C. Cir. 2004) (citation and quotation marks omitted). Instead, "to guide [the] unreasonable-delay analysis," courts typically weigh the six

3

factors identified by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984)—often shorthanded as the "*TRAC* factors." *Da Costa*, 80 F.4th at 340. They are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up).

These factors are not "ironclad," but rather serve as "useful guidance in assessing claims of agency delay." *Id.* After all, whether an agency's delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Instead, "[e]ach case must be analyzed according to its own unique circumstances" because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). That said, the D.C. Circuit has stressed that the two "most important" factors in these types of cases are the first and the fourth ones: "whether the agency's timing of adjudications follows a 'rule of reason'" and "the effect that an order 'expediting delayed action' would have on 'agency activities of a higher or competing priority.'" *Da Costa*, 80 F.4th at 340 (citing *TRAC*, 750 F.2d at 80).

4

Applying these principles here, and accepting Khodabakhshian's allegations as true, the Court agrees with Defendants that the complaint fails to state a claim of unreasonable delay.

*     *     *

As a threshold matter, Khodabakhshian insists it is premature for the Court to even analyze the *TRAC* factors at this juncture. (*See* Opp'n at 11–16.) But that position conflicts with precedent from the D.C. Circuit, which has affirmed dismissal of unreasonable delay claims at the pleadings stage under the *TRAC* factors. *See Da Costa*, 80 F.4th at 339–40; *Mukkavilli v. Jaddou*, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024). This argument fails.

Relatedly, Khodabakhshian's motion to compel the production of an administrative record misses the mark. Courts in this District routinely excuse Local Rule 7(n)'s requirement of an administrative record in these sorts of cases. *See, e.g.*, *Majlesi v. Rubio*, 2026 WL 654377, at *5 n.8 (D.D.C. Mar. 9, 2026) (collecting cases); *Tahavori v. Blinken*, 2024 WL 1328546, at *3 (D.D.C. Mar. 28, 2024) ("Local Civil Rule 7(n) is an ill fit for many immigration mandamus actions."). For good reason. As plenty of judges in this District have explained, given the relevant focus of the *TRAC* factors, an administrative record is generally "unnecessary to decide the threshold legal question[]" of whether a complaint has "plausibly alleged unreasonable delay." *Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024); *see also, e.g.*, *Dey v. Rubio*, 2025 WL 2320364, at *4 n.4 (D.D.C. Aug. 11, 2025); *Diakanua v. Rubio*, 2025 WL 958271, at *11 n.10 (D.D.C. Mar. 31, 2025); *Bahrami v. Blinken*, 2024 WL 3638200, at *8–9 (D.D.C. Aug. 2, 2024). Although Khodabakhshian cites a handful of cases ordering the production of an administrative record in visa-related proceedings (*see* ECF No. 24 at 2–3), those cases are distinguishable because, as those judges explained, they all involved the concrete prospect of a motion for preliminary injunction—given that the diversity visa program at issue in those cases was weeks

5

away from expiring—and an administrative record would be necessary to resolve such a motion. Those circumstances are not present here. Accordingly, the Court **DENIES** the motion to compel an administrative record (ECF No. 24) and otherwise reaffirms that it appropriately weighs the *TRAC* factors to evaluate the plausibility of the unreasonable-delay claim in the present posture.

From there, the Court walks through the individual *TRAC* factors.

\*    \*    \*

***Factors One and Two***. The first two factors are often considered in tandem, as they focus collectively on whether the agency's timeline is based on some "rule of reason" and whether Congress established any timetable for action. *Majlesi*, 2026 WL 654377, at \*7 ("In essence, these two factors require the court to evaluate 'whether there is any rhyme or reason—congressionally prescribed or otherwise—for the agency's delay.'") (cleaned up) (quoting *Rashidian v. Garland*, 2024 WL 1076810, at \*6 (D.D.C. Mar. 8, 2024)).

Taking the two factors in reverse order, there is no congressionally imposed deadline for adjudicating visa applications like the one at issue here. At most, Khodabakhshian points to a subsection of the INA that describes "the sense of Congress" as to the typical anticipated timeframes for completion. 8 U.S.C. § 1571(b). But the D.C. Circuit has described that language as an "aspirational statement" and not a hard "deadline," *Da Costa*, 80 F.4th at 344, and even Khodabakhshian acknowledges that the provision is "merely precatory." (*See* Opp'n at 19.)

With no "congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, 2020 WL 3082018, at \*6 (D.D.C. June 10, 2020). And there is an abundance of it in this District that helps illuminate the tipping point into unreasonableness: typically, in this context, "delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Diakanua*, 2025 WL 958271, at \*6 (quoting *Sarlak*, 2020

WL 3082018, at *6); *see also, e.g.*, *Majlesi*, 2026 WL 654377, at *8 (finding delay of "a little over three years" from interview not unreasonable); *Al Saedi v. LeBailly*, 2025 WL 485410, at *5 (D.D.C. Feb. 13, 2025) (same as to 28-month delay); *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 76 (D.D.C. 2022) (same as to three-year delay).

In tabulating the length of the delay, most courts measure "using the period between the last government action and the issuance of the opinion." *Majlesi*, 2026 WL 654377 at *8 (quoting *Asadi v. U.S. Dep't of State*, 2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024)). Here, that would mean a delay of about 28 months. For their part, Defendants propose measuring only through the filing of the lawsuit, *see Barazandeh v. Dep't of State*, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024) (adopting this approach), which would constitute a far shorter delay of only 14 months or so. (*See* Reply at 6 n.2.) In keeping with what seems to be the majority view on this question, this Court employs the first approach because the continued inaction on Khodabakhshian's application did not magically disappear once she filed her lawsuit. She continues to sit in limbo even today, and the Court should compute the resulting delay accordingly.

But even through that lens, the 28-month delay here fits well within the range that courts in this District have declined to find unreasonable, as the above cases reflect. So, the first factor—one of the "most important" factors, *Da Costa*, 80 F.4th at 340—easily favors Defendants.

***Factor Four.*** The fourth factor focuses on "the effect of expediting delayed action on agency activities of a higher or competing priority[.]" *TRAC*, 750 F.2d at 80. The Court agrees with Defendants that this factor also tilts in their favor. If the Court grants Khodabakhshian the relief she seeks, her application would suddenly be prioritized over so many other visa applicants who likewise await action on their visa applications. The D.C. Circuit has been critical of this sort of "line jumping" for precisely that reason—frontloading one application comes "at the expense

7

of other similarly situated applicants" and "impose[s] offsetting burdens on equally worthy" applicants who continue to wait in line. *Da Costa*, 80 F.4th at 343–44 (citation omitted); *see also Zoroofchi v. Rubio*, 2025 WL 928607, at *5 (D.D.C. Mar. 27, 2025) ("Since consular processing capacity is a zero-sum game, an order expediting processing of [one] application would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own.") (cleaned up). Khodabakhshian's only real response is to argue that these concerns are misplaced because there is no formal queue that she would be jumping. (Opp'n at 21 ("There is no reordering when there is no order.").) But even if true, this argument overlooks the broader problem with asking to "be prioritized for processing ahead of others," *Majlesi*, 2026 WL 654377, at *8 (quoting *Augustin v. Blinken*, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023)), which holds true whether she and the other applicants are awaiting action in some sequential order or not.

***Factors Three and Five****.* As these factors collectively "focus on the interests affected by agency delay," *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 817 (D.C. Cir. 2024), they are often discussed together, as well. The third factor, more specifically, contemplates that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake," while the fifth factor considers "the nature and extent of the interests prejudiced by the delay." *Id.* (quoting *TRAC*, 750 F.2d at 80).

Khodabakhshian says these considerations tilt in her favor because she is "suffering extreme professional and emotional harm … due to the prolonged and indefinite uncertainty." (Opp'n at 20.) She alleges that she is "missing out on crucial mentorship, training, and opportunities made possible only by esteemed U.S. institutions like UCLA," continues to "lose irreplaceable time," is suffering a "set back" to her "career trajectory," and is experiencing "hardship from loss of wages and opportunities coupled with the inability to plan for her future."

8

(Compl. ¶¶ 68–69.) These effects are real and regrettable, and the Court takes them seriously. So factors three and five tilt somewhat in Khodabakhshian's favor. *See Hussain v. Baker*, 2026 WL 1815522, at *3 (D.D.C. June 24, 2026); *Ahmadi v. Scharpf*, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024). But at the same time, these sorts of concerns are shared by so many other languishing visa applicants. So, without more, the Court cannot conclude that the articulated harms "threaten [Khodabakhshian's] physical health and well-being in a manner compelling enough to overcome Defendants' advantage on the more important factors." *Majlesi*, 2026 WL 654377, at *9.

*Factor Six*. Finally, the sixth *TRAC* factor examines "whether there is any impropriety lurking behind agency lassitude." *Da Costa*, 80 F.4th at 345 (cleaned up); *see also Fakhimi v. Dep't of State*, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023) (explaining that this factor calls on courts to ask "whether the agency has acted in bad faith in delaying action") (citation omitted). Here, Khodabakhshian does not plead any facts to suggest that Defendants are acting in bad faith. At most, she alleges in her briefing that the delay itself "is an act of extremely bad faith[.]" (Opp'n at 24.) But that argument cannot suffice. If it could, a finding of bad faith would become a foregone conclusion in every one of these cases because the underlying delay is what triggers the broader analysis in the first place. So Khodabakhshian's argument is unavailing. At the same time, "the lack of plausible allegations of impropriety does not weigh against [Khodabakhshian]," *Fakhimi*, 2023 WL 6976073, at *11, meaning that this final consideration is simply neutral.

\* \* \*

On balance, after applying the *TRAC* factors to Khodabakhshian's well-pled allegations, the Court concludes that the complaint fails to state a plausible claim for unreasonable delay.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings (ECF No. 15) and **DENIES** Plaintiff's motion to compel production of an administrative record (ECF No. 24). The Court will issue a separate order so stating.


Dated: August 7, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge